Oh, yay. Oh, yay. Oh, yay. The Honorable Appellate Court, 5th District, State of Illinois is now in session. The Honorable Justice Barber is presiding along with Justice Overstreet and Justice Warden. The first case this morning is number 517-0139, People v. McFadden. Arguing for the appellant, Leroyce McFadden, is Elizabeth Crotty. Arguing for the appellee, People of the State of Illinois, is Patrick Daly. Each side will have up to 10 minutes for their argument. The appellant will also have up to 5 minutes for rebuttal. You will see the digital timekeeping device on my screen. When time has expired, I will hit the gavel. Finally, please remember no photographs and only the clerk of the court is permitted to record these proceedings today. Good morning. Good morning. So, Ms. Crotty, whenever you're ready, you may begin. Thank you. May it please the court, counsel, and to my clients, parents, and family who I understand are watching the live stream from home. My name is again Elizabeth Crotty, and I represent Leroyce McFadden in this matter. Three issues were raised in briefing, but subject to this court's questions, I'd like to focus my argument today on the first issue, and that is that trial counsel provided ineffective assistance by failing to move to suppress 17-year-old Leroyce's statements to police. Now, this is a limited issue, though not uncomplicated. The two issues before this court to decide that first issue are whether such a motion would have been meritorious. Namely, was there a reasonable probability that had counsel filed that motion, it would have been successful? And second, that there was prejudice, meaning there was a reasonable probability that the lack of that motion affected the outcome and fairness of the trial. Now, the perspective for these questions underlying the issue is that of 17-year-old Leroyce. The custody analysis and certain factors are objective, but age is inherent in those factors and was known to the police officers from the beginning, if not before the interrogation. Secondly, the voluntariness question is not objective, and it can be based on the personal characteristics of a defendant alone here in Illinois. So turning to the substance of the issues, there were multiple interrogations and multiple sections of the interrogation relevant to this issue. So I'd like to break that down piece by piece. First, to briefly discuss the custody issue, although the record makes this issue quite clear that there would be a reasonable probability that a trial court would find that Leroyce was in custody. Again, 17-year-old Leroyce was picked up by police officers, driven to the police station. The police took his shoes. There were some questions off record, although again, because no motion was filed, whatever discussion did or did not take place before that is not a record. That being said, when he was placed into an interrogation room, left alone, and then joined by two officers who blocked his exit, no reasonable person, never mind a reasonable 17-year-old, would have felt free to leave. And that should inform the analysis of the first interrogation, particularly so where Leroyce later, when he did assert his rights, the police gave him a jumpsuit that said prisoner. There was no question that Leroyce was never actually free to leave, nor would he have believed he was. So in the first interrogation, the majority of the beginning of the interrogation, as with all the interrogations here, is police conversation. Now, as this court will see if it has or when it does watch the videos in this case, Leroyce is growing progressively more and more uncomfortable. And at one point, he's sitting in the corner, slumped down, pulls his shirt over his head, and says something to the officers. He then pulls his shirt down and says, I don't want to talk no more. That is a clear invocation of his right to remain silent, both through his words and through his actions. However, the police did not respect that invocation at all, never mind scrupulously honor it. One of the officers jumped in appearing to even interrupt Leroyce. The second officer, there was a break, a silent break. And then he again, began to speak to Leroyce, both trying to get him to talk. That is a violation of the issue. It would have been successful. And that error taints every single conversation, every single comment that followed both in that interrogation and in the interrogations the next day. Next, about 10 minutes later in that same interrogation, Leroyce very clearly says that he wants counsel, that he wants, he doesn't want to talk anymore, and that he wants to call his mother to help him get an attorney. Now, this portion of the interrogation did not come in at trial. The basis for that, you know, there's not a discussion on the record, but that portion of the interrogation is not admitted. But it is relevant to discussing why the interrogations the next day should also have been litigated and suppressed. During that period of time, the police refused to let Leroyce call his mom. They say he's not going to be allowed to talk to her at that time. They continue to ask some questions, which constitute interrogation because a response would have been incriminating, such as, for example, as they're taking Leroyce's clothing, they ask, were you wearing those shorts when you did this? Now, that's a yes or no question. A yes answer or a no answer would have been an admission that he had been involved in this incident. Counsel, counsel, so I understand the first day there's this request for your client to talk to his mother, but that's not part of the trial record, but the second day, it is part of the record? Yes. Okay. So he, in the first interrogation, he did explicitly, at the same time he asked for counsel, he asked to call his mother, and then at some point knocked on the door and said, is my mom here? And the police explicitly, at first, are ignoring that and then say, you know, she's not going to be allowed to talk to you right now. So then when we get to the second interrogation, it's important to remember that Leroyce has now been held over 24 hours in jail without having access to an attorney, without being allowed to call his mother. And then, you know, in all of this, it's important to remember, particularly for the voluntariness analysis, Leroyce is 17 years old. He has learning disabilities. He has mental health issues. And all of those factors should have been part of litigation that never occurred here. So you have a kid who's held overnight without his mother, without a parent, without an adult, without access to an attorney that he's requested. And then the police bring him back to the interrogation room a little over 24 hours later. Now, again, there are conversations that occur off record that would have been part of the litigation had counsel raised this issue. Those are not off record. However, given what we do know, there is at least a reasonable probability that had these issues been presented, they would have been successful. So the lead investigator, you know, not a minor player in this incident, the lead investigator goes to Leroyce's jail cell, reads his calls, I mean, reads his charges, his arrest warrant. Then he claims that Leroyce has said he wants to talk again. Now, at the beginning of that second interrogation, you can see Leroyce's behavior, he's very muted. Any responses he gives are barely audible or barely visible. You said this is part of the record or is not part of the record below? So the interrogation is part of the record and this interrogation, that second interrogation, was shown at trial. What is not part of the record is whatever conversation took place between this lead investigator and Leroyce when he was in his jail cell. So when that lead investigators, you said, and I'm assuming you're quoting, when the lead investigator said Leroyce wants to talk again, that is part of the record or it's not? So we have him coming back to the interrogation room and saying, now you indicated you, and this is not a direct quote, I do have quotes in the briefing, but he says to Leroyce, you've indicated you wanted to talk to me again. Now, the standard is not just that Leroyce initiated. Let's remember, we already have at least two invocations of the right to silence that were not scrupulously honored. Okay. Then we have denial of, apparent denial of counsel at this interrogation. And so all of these circumstances don't show, even if we determined, even if the court below were to find that Leroyce had re-initiated the conversation, there's not a generalized desire to reopen discussions about the investigation. That's not present here. Then when the officer says, what did you want to tell us? Tellingly, Leroyce remains silent, and it takes additional comments from the police officers before he decides to respond to that, because the police are at this point saying, we know you did this. Such things as, if you don't tell us what's going to happen, what happened, you're going to be seen as cold blooded. You need to think about, you know, your belief in God, things like that. So throughout the court- Did Leroyce, I apologize, but did Leroyce reply to the lead investigator when he went back into the interrogation room and made the statement that I understand you want to talk again? Did Leroyce reply to that? So that's a great question. And to the, when he initially says that, there's, whatever response Leroyce gives is hard to discern from the video. You know, he's hunched over, perhaps shaking his head, perhaps mumbling. But then when the police officer actually asks him, what did you want to say? He doesn't respond. Then he asks at one point, well, what do you, Leroyce asked the officer, where do you want me to start? As in, you know, where do you want, what do you want me to say? So these are not, this is not a conversation that evidences someone who said, oh, I want to reinitiate interrogation and waive these rights that I've already waived, that I've already asserted. Well, if we, if we assume just for argument that he, the mumbling response to the officer's question of, do you want to talk to us again? If we assume that that was a yes, was, when was the next time he said, all right, I'm done now. I don't want to speak anymore. Well, so the. Or invoked his right to an attorney. Sure. So I'm not sure that those were explicitly made after that point. But I would argue, even if you, even if you assume that that is exactly what happened in the beginning of that interrogation, Leroyce's other, you know, body language and comments don't evidence him knowingly and intelligently waiving his rights that he had invoked. Simply saying, yes, I want to talk is not you know, enough to overcome the fact that the police did not honor his previous invocations. Um, and that he is not, um, he is not actively participating at the beginning of this until they wear him down, continue to deny access to his mother. Um, and again, no attorney was, was provided during this. So. After he, in that first interrogation, when he asked for, or stated he didn't want to speak any longer, wanted his mother to help him get an attorney. How long after that statement did the interrogation continue before there was a break, a break that resulted in the officers coming back and saying, I understand you want to talk to us again. Sure. So there's two separate points. And I think I've made clear in the briefing that there's a, there's a point where Leroyce pulls his shirt over his head. Um, and I firmly believe that if litigated, that would show that he was also, um, invoking counsel at that point. Of course, what the officers heard, what Leroyce said, those were all matters right for litigation for counsel who had access to the client. What's clear from that is that after that he pulls the shirt down and says, I don't want to talk no more. Police jump in, continue questioning for about 10 minutes. Then at that point there, um, they decide they're going to do a gunshot residue testing. Um, and during that is when Leroyce says again, you know, is something to the effect of, you know, can I get my attorney? Um, I want an attorney ask for mom says he doesn't want to talk anymore again. Um, so at that point, the questioning that continues, um, absolutely takes a different tone. You know, there is a purported compliance with that request, um, the sense of, um, however, you know, while the officer is still doing the, um, the testing, and then they, they decide they're going to get a warrant for that. So they break, and they keep him in that room for hours. They come back to do the questioning to take his clothing. So at those points, when they go back in under, you know, police procedure guidelines, or under the guise of police procedure, they still ask questions, which, you know, an experienced officer doesn't need input from a 17 year old about which clothing to take, or whether he's right or left handed, by the way, a question he'd already asked. So we have these questions continuing when the officers go in to do those things. So it is not a continued barrage of questioning. However, it is undermining Leroyce's rights that he has invoked. Counsel, you'll have five minutes and reply. Thank you. Mr. Daly, whenever you're ready. Thank you, Your Honor. May it please the court and counsel. For the record, my name is Patrick Daly. I'm appearing on behalf of the people of the state of Illinois. I'm going to start actually, with the reinitiation, or the, you know, the, the allegation of defendant reinitiated the interrogation. The reason I do so is, although there's obviously argument made here argument in the briefs about whether defendant was in custody, whether defendant had unambiguously asserted his right to counsel, he certainly did unambiguously assert his right to counsel, at some point at the end of that conclusion, the first interrogation, which is when the officers then terminated. But I think it's also important to note that the incriminating statements that defendant made, with regards to statements about possessing and firing a weapon, that evening, were made only during the course of the second interrogation. So, the circumstances of the first interrogation, you know, might be important in the sense that if we're looking at a, an attenuation argument, then, you know, obviously, illegality, principle illegality, and then an ensuing interrogation becomes an important factor with regards to the amount of time that elapses between the first and second interrogation. But what we have here is a different situation where the question really is presented before counsel. And again, I want to emphasize that this is a question for this court with regards to a counsel's, you know, the likelihood of a successful motion to suppress, and whether counsel's, you know, decision making in that regard, which we presume, as a matter of law occurred here, was unreasonable under the factual circumstances. So, here, where the allegation is that the defendant re-initiated the interrogation, attenuation is not an issue. So, I think we could really probably fast forward to the re-initiation and look at the circumstances that surround that. What we do have on the record, or at least in the recording, if to be specific, is that, you know, we do know that the defendant invoked his right to counsel and didn't want to speak anymore. We do know that he, that no further questioning occurred at that point. The next communication that we have between the is where they're back on recording, and the defendant is there, and he's asked by the police whether he was wanting to speak to the officers again, and whether he was doing this voluntarily. And this is, you know, the defendant had acknowledged and agreed that this is what he wanted to do. Notably, this conversation occurred after the state had obtained a warrant. So, we're not really dealing with any questions anymore at this point, whether or not the defendant is in custody. If there is ever any sort of lingering question leading up to this, certainly at this point, there's no doubt he's in custody. So, trial counsel in assessing these factual circumstances, I think, first has to take a step back and say, all right, well, am I going to be able to convince the court? Well, let me rephrase that to be perfectly straightforward on this. It's a Fifth Amendment issue, so the burden is on the state and the threshold. So, the question for counsel is whether, do I believe that the state will be able to establish, based on these factual circumstances, that the defendant voluntarily agreed to speak to the officers again? Is there persuasive objective criteria that I believe that if the state were to present this evidence in this recording to the trial court, that it would not be convinced that the defendant's agreement to speak again to the officers was not voluntary? And the answer, I think, to that, that a reasonable attorney could make is no. Now, certainly, other attorneys, other judges, other appellate counsel could come to differing conclusions, or perhaps might see an avenue of attack that may not be necessarily one that would be perceived by trial counsel here. But there's nothing here to suggest that the decision or the perception that the defendant, that the state could meet its burden of showing that the defendant reinitiated the conversation could not be met. If that's true, all right, and the first, you know, part of the inquiry is who initiated the conversation, and here it's the defendant who acknowledges on the record that sought out to reinitiate. Then was defendant's waiver of counsel after that an agreement to speak with the officers voluntary, and were the statements that he made after that voluntary? And I think that's really then the second part of the inquiry, and it's one the defendant goes into a great deal as well on appeal. The defendant was remirandized, the record does show that, and the recording does show that. There's nothing to indicate that the defendant was not you know, aware of what he was doing, and that he was doing so, you know, voluntarily. So the question is then whether trial counsel could perceive that the statements that defendant provides subsequent to that were not voluntary, because in the end, the state, in order to get these inculpatory statements in, is going to have to show that those statements were voluntarily given, all right, and not in violation of the defendant's Fifth Amendment rights. Counsel, let me interrupt you a moment. Yes, your honor. My understanding that the state did not provide full discovery that was requested until very close to the date of trial, so counsel representing defendant had three and a half years without actually the key piece of information against the defendant, and he only got, I assume, the tapes pretty close to the date. We're making a lot of assumptions about trial counsel having an opportunity to evaluate the tapes and determine whether or not a motion to suppress would be successful, but at the same time, I just would like to know, shouldn't we consider also the fact that for three and a half years, this attorney did not even have access to the most key piece of information against the defendant? The first thing that you state in your question, your honor, I think kind of jumps out at me is the term assumptions, and a lot of what we deal with in these claims of ineffective assistance of counsel sort of start and begin with a set of presumptions, and the presumption that is attached to a claim of ineffective assistance of counsel is that counsel did what counsel is supposed to do, and that in that context, if counsel had some problem, concern, or incapacity to review the recordings, which are not, you know, especially long in comparison to other interrogations, I believe the second interrogation was only about three hours, and the first lasted about an hour, and that counsel would have articulated at the time of the trial, at the time of the proceedings before the trial court, that he was not prepared and was not, you know, ready to confront the statements that the defendant made, so the assumptions here, such as they occur, flow in favor of counsel being prepared and making a rational and professional judgment, not the presumed that counsel did not have the opportunity to do it. There's no way for the state to sort of answer that particular proposition, because I'm not in the head of trial counsel, which is why, you know, under Strickland, the court emphasizes that the presumptions flow in favor of counsel's competency, unless the defendant establishes otherwise. Okay, we will assume then that the were not a request that the state fully comply with the discovery that I assume was made initially when counsel became counsel for the defendant, and so for some reason, we would assume that that his representation was reasonable if he let the defendant stay in jail for three and a half years, made 20 continuances, stretched the case out, which was relatively simple when you look at the number of witnesses, and never forced the state to provide him with the discovery of the essential piece of evidence against the defendant. I'd like you to respond to that. I, to be honest, Your Honor, I'm not quite sure the answer you're seeking. Am I, is this, is this, are you saying that this is additional evidence to show or suggesting to show that counsel was not properly representing the defendant, I presume? Well, I don't know, I really don't know the reasons for those continuances, Your Honor, and I certainly don't disagree with the proposition that, you know, counsel ought to try a case, you know, as expediently as possible, but if a client is sitting in jail, but again, I just sort of go back to the comments I made earlier that I don't know what counsel is doing or not doing or, or what the motivations were for a case to go on as long as it did. I mean, you know, to be honest with you, Your Honor, sometimes cases don't get better with age, they get worse. And I say that, and I say that not to be flippant or to, to, to, you know, to, to impugn what you're suggesting. What I'm saying is that it doesn't necessarily become, you know, a de facto evidence of ineffective assistance to counsel, at least from a Strickland prejudice standpoint, that the length of time between charge and trial equals a claim or suggestion of ineffective assistance to counsel. And again, the presumption is such that counsel is doing what he is supposed to do to represent the defendant. Counsel? Yes, Justice Doris. Can you address this issue of the defendant requesting to talk to his mother or see his mother and how that relates to the second date? Okay. Well, I, there's two parts of this, Your Honor. Number one, and I'll try not to stretch this out too long, but I do, I do make mention of the fact in the brief that the defendant was 17 at the time of the commission of this, of this murder. And that, at that time was prior to the amendment of the Juvenile Court Act for defendant turn, where the age of adulthood was 17 and not 18. Now, before everyone jumps on me for that, I understand, of course, that for sentencing purposes under Miller, 18 years old is the juvenile age, the cutoff point. The point that I made, and I tried to make in a brief here, and this relates specifically to that question of access to a parent and consultation with a parent. And that's something that is particularly important to where it's a juvenile involved. But at the time that the officers were engaging in conversation with the defendant, he was not at that point, legally a juvenile. He was an adult. If under the exclusionary rule, the purpose is to deter police misconduct and to punish officers who are willfully violating the law, at least at the context of whether the Juvenile Court Act is being complied with. And that would include, you know, consulting with a parent or interested adult or guardian, or a juvenile officer is not a consideration here for purposes of whether the officers are violating some, some legal script. Now, having said that, I understand that given the defendant's age and the request for the presence of a mother is certainly a factor to be considered. Two points to make there. Number one, the presence of the mother or a parent, even under for, for a strictly juvenile case, which we can assume for the sake of argument here is what we're dealing with. It's just one factor among many, and we go into great detail in our argument that there are numerous factors here, which, which suggests that defendant statements were voluntary. Number two, the defendant having requested a parent who wanted to speak to a parent before the beginning of the second interrogation, it's worthy to note that the defendant apparently reinitiated the second conversation, although he had had apparently time had elapsed, which the defendant wanted to hold, you know, tightly to this, you know, necessity to speak to his parent could have stuck with that, but instead chose to again, speak with the officers. And number three, the recording will show that one of the purposes or reasons that the defendant wanted to speak with his mother was because he just simply wanted to talk to her about his situation in the sense of that, you know, well, I think his statement was, I'm going to be going to be wanting to talk to her before I get shipped off or something to that effect. I, I don't disagree with defense counsel that that these considerations are not, you know, I mean, I agree with counsel that these are material considerations, certainly. But I do think that a reasonable counsel could viewing that when weighed against the significant amount of evidence that would show that the defendant's statements were otherwise, number one, reinitiated product of a reinitiation and two are voluntarily given that counsel could, could choose to see that emotion to suppress evidence would, wouldn't that would not be a successful motion. Thank you, your honors. I'll stand on my brief from a range of my arguments. All right. Appreciate it. Um, Miss karate. Yeah. I'm in reply. Yes, your honor. I'll go in a bit of a reverse order. I just pause it to this court. Um, Leroy's first asked for his mother to help arrange to get an no one provided an attorney. Um, I posit to the court, how long does a 17 year old kid who hasn't graduated from high school yet, who has learning disabilities, how long does he have to sit in a prison cell by himself or a jail cell by himself, um, without access to any help from a parent without someone else providing an attorney, um, before whatever request he did or did not make to speak to the police feels coerced. Um, then yes, he tries different tactics in the second interview to try to get to speak to his mother. He, you know, he does at some point say he wants to talk to them before he gets shipped off. Um, but he, his requests for his mother were repeated, repeatedly ignored, denied. Um, so he tried different tactics that doesn't make that any coercive. It, it makes it even more so. Um, and you know, again, I, the issue of being 17 in the juvenile statute is really a misdirection here. Um, we know that the concerned adult factors is important even for 17 year olds who are not subject to the act. Um, but Justice Wharton to go to your question, um, yes, the whole, the whole of this litigation, the whole of the trial, the whole of these statements are important to decide whether counsel is reasonable. Um, and, you know, while we presume reasonableness and strategy to a degree at every turn, this attorney proved us wrong. You know, the we're waiting three and a half years without, you know, any reason. Um, and each piece of evidence, you know, and this is where issue one and issue two dovetail, each piece of evidence against the Royce, there was a basis to challenge its admissibility or its credibility. And counsel repeatedly failed to do that. You know, we have a nine month one call where the caller isn't identified someone off of the call, uh, names LaRoyce. We don't even know if that was a witness. So, you know, that wasn't challenged at all. We have serious problems with the key witness who, you know, apparently statements early on and statements, um, at trial seem to be very different and all of these issues were, were, should have been litigated and would have impacted, um, the case here. You know, we don't assume that all of these decisions were reasonable, um, in, in this context and particularly so where there's such clear invocations and absolutely no litigation. And, you know, we don't have, um, you know, counsel mentions the issue of attenuation. Well, you know, what we look at is, you know, the mostly factors of was the, were the initial, um, invocations scrupulously honored and they weren't, you know, we don't, we have one invocation, clear invocation to remain silent and counsel and neither one of those is scrupulously honored. Then we throw the 17 year old kid in jail without getting to talk to his mom, without getting to actually speak to the attorney he requested. We wait 24 hours. We read him his charges that include first degree murder and, um, you know, aggravated discharge of a firearm, I believe. And then, um, and then when he comes into the room, he fumbles through the Miranda proceedings, but he doesn't evidence a willingness to talk. He is asking the officers what they want from him and later bargaining saying, I'll help you if you let me talk to my mom. You know, that's not voluntary and no reasonable defense attorney listens to these tapes, watch these tapes and takes no action at suppress any part of these. Um, and these, you know, the prejudice can't be overstated. You know, we have in the first interrogation towards the end, after the initial invocation, he starts to provide motive evidence. You know, he hasn't made any confessions, but he starts to talk about, you know, altercations between him and folks on the porch. And the second one, he confesses. And then later we, the jury gets to see him go to the scene with police officers. So that is the state's case, you know, without part parts or whole of these, these videos, this, the whole case changes, you know, Buchanan himself is not a reliable witness. Um, you know, so really reviewing all of these decisions and the prejudice in combination, the Royce respectfully requests that this court vacate his conviction and order a new trial. And alternatively, as consistent with the briefings, if for some reason this court chooses not to do so, he should at least have a new sentencing hearing for the reasons briefed. Thank you. Thank you, counsel. Both of you. We are aware of the fact that there is a motion to and we will consider those along with the case and we will issue our ruling in due course. Thank you very much. Both of you. Thank you.